UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------------------- x
                                    :
LUIS ALBERTO TORRES,                :      CASE NO. 3:25-CV-01679(SFR)
                                    :
V.                                  :
                                    :
KIMBERLY NATOLI, KATHY COPPLA,      :
DCF, M&J BUS INC., LIZANDRO         :
RODRIGUEZ, MARILUZ GUERRETTE        :      DATE: November 25, 2025
                                    :
-------------------------------------------------- x
```

### RECOMMENDED RULING ON THE PLAINTIFF'S AMENDED COMPLAINT

The plaintiff, Luis Alberto Torres, proceeding *pro se*, is a Venezuelan national who worked for one of the defendants, MJ School Transportation, Inc. ("MJ Transportation"), as a school bus monitor. (Doc. No. 18-1 at III ¶ 1).[1] On October 6, 2025, the plaintiff initiated this action against MJ Transportation; two of its employees, Mariluz Guerrette and Lizandro Rodriguez; the Department of Children and Families ("DCF"); and two DCF employees, Kathy Coppla and Kimberly Natoli; for damages resulting from the DCF's investigation into events connected to the plaintiff's employment. (Doc. Nos. 1, 12). The plaintiff also moved for leave to proceed *in forma pauperis* ("IFP"). (Doc. No. 2). The following day, the Court (Russell, J.) referred the plaintiff's IFP motion and an initial review of the complaint to the undersigned. (Doc. No. 5).

On October 20, 2025, this Court denied without prejudice the IFP motion on the ground that the plaintiff failed to include sufficient financial information. (Doc. No. 13). The Court gave the plaintiff additional time to correct the IFP motion and held the initial review of the complaint in abeyance pending a renewed IFP motion. (*Id.*). Ten days later, the plaintiff filed a corrected

---

[1] The Court notes that the proposed amended complaint does not utilize consecutively numbered paragraphs through all sections of the amended complaint. Accordingly, the Court will reference the particular section and, if applicable, paragraph number when citing to the amended complaint.

IFP motion, which the district judge referred to the undersigned and which the undersigned granted. (Doc. Nos 16, 20, 23).

On November 4, 2025, the plaintiff filed a Motion to Amend the Complaint, (Doc. No. 18), which the district judge also referred to the undersigned. (Doc. No. 20). The proposed amended complaint asserts five causes of action: Count I, discrimination and persecution based on national origin in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; Count II, deprivation of the plaintiff's equal protection rights and conspiracy, in violation of 42 U.S.C. §§ 1983, 1985; Count III, hate crimes and crimes against humanity in violation of international human right conventions incorporated by the Supremacy Clause of the United States Constitution, art. VI, cl. 2; Count IV, torture and cruel, inhumane or degrading treatment in violation of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), International Covenant on Civil and Political Rights ("ICCPR"), and 42 U.S.C. § 1983; and Count V, defamation and malicious falsehood under Connecticut common law. (Doc. No. 18-1 at 4). In addition, the proposed amended complaint removes defendants Kathy Coppla and Lizandro Rodriguez and adds defendants United States President Donald J. Trump, United States Secretary of Homeland Security Kristi Noem, and the plaintiff's former coworker Jesús Muñoz. (Id. at 1-3).

For the following reasons, the Court GRANTS the Motion to Amend the Complaint (Doc. No. 18) on the ground that the plaintiff is entitled to amend his complaint as a matter of course, and recommends that the amended complaint be DISMISSED. In particular, the Court recommends dismissal of Counts I, III, and IV, with prejudice and without leave to amend, as to all defendants. In addition, the Court recommends that Count II be dismissed with prejudice and without leave to amend as to all defendants except Kimberly Natoli in her individual capacity.

Count II should be dismissed without prejudice and with leave to amend as to Kimberly Natoli in her individual capacity. Lastly, the Court recommends that Count V be dismissed with prejudice as to President Trump, DCF, and Kimberly Natoli in her official capacity, because these defendants are immune from suit, and as to Secretary Noem, because leave to amend would be futile. Count V should be dismissed without prejudice and with leave to amend as to MJ Transportation, Mariluz Guerrette, Jesús Muñoz, and Kimberly Natoli in her individual capacity. The Court recommends that this case be DISMISSED with prejudice and without leave to amend as to Counts I, III, and IV; for Count II, DISMISSED with prejudice and without leave to amend, with the exception that Count II should be DISMISSED without prejudice and with leave to amend as to Ms. Natoli in her individual capacity; and for Count V, DISMISSED without prejudice and without leave to amend for all defendants except President Trump and DCF.

## I.     <u>MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>

Federal Rule of Civil Procedure 15(a) identifies certain circumstances in which a plaintiff may amend his complaint. Notably, Rule 15 entitles the plaintiff to amend his complaint one time without the Court's leave, so long as it, in relevant part, is amended "no later than . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A). "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (same); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1476 (3d ed.) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case. . . ."); *c.f. Elliott v. City of Hartford*, 649 F. App'x 31, 32 (2d Cir. 2016) ("It is also generally the case that all causes of action alleged in an original complaint which are not alleged in an amended complaint are waived.").

3

Here, the plaintiff seeks leave to amend his complaint and does so before any defendant has been served. Accordingly, he is entitled to amend his complaint one time without the Court's leave. The motion is therefore GRANTED. The Court now turns to the substance of the plaintiff's proposed amended complaint. (Doc. No. 19).

## II.    <u>LEGAL STANDARD</u>

Section 1915(e) of Title 28 of the United States Code provides that a court "shall dismiss the case at any time if [it] determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A valid complaint need not plead "detailed factual allegations," however, it must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A claim is plausible on its face where the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated differently, the complaint needs to "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

When, as here, a plaintiff is proceeding *pro se*, a court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests . . . ." *McFadden v. Noeth*, 827 Fed. App'x 20, 24 (2d Cir. 2020) (quoting *Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010)) (internal quotation marks omitted); *see Stancuna v. New Haven Legal Assistance*, 383 Fed. App'x 23, 24 (2d Cir. 2010) ("[W]e nonetheless construe the submissions of a *pro se* litigant

4

liberally and interpret them so as to raise the strongest arguments that they suggest.") (internal quotation marks omitted).

## III.    MERITS OF THE COMPLAINT

In the amended complaint, the plaintiff asserts violations of international laws, federal constitutional rights, federal statutes, and Connecticut common law against MJ Transportation, Mr. Muñoz, Ms. Guerrette, DCF, Ms. Natoli, President Trump, and Secretary Noem.  The Court notes that, in amending the complaint, the plaintiff added President Trump and Secretary Noem as defendants and removed Kathy Coppla and Lizandro Rodriguez as defendants.[2]

Although the plaintiff asserts five separate counts, he does not indicate which count is asserted against which defendants.  The Court therefore presumes that each count is asserted against all defendants, unless the allegations indicate otherwise.

### A.    Facts

The plaintiff is a "Venezuelan national legally residing in the United States."  (Doc. No. 18-1 at I).  On or around January 15, 2025, President Trump and Secretary Noem ("Federal Defendants") initiated a "discriminatory campaign targeting Venezuelans." (*Id.*).  As alleged, "[t]he pattern of targeting Venezuelans corresponds to a broader hate campaign promoted at the federal level to stigmatize and eradicate Venezuelans through social and administrative extermination." (*Id.* at III ¶ 7).  These "federal directives were implemented at the local level through state agencies," including DCF and MJ Transportation, "which together falsely criminalize[d], defame[d], and persecute[d] [the plaintiff] for his nationality and political identity." (*Id.*).

---

[2] The Court recommends that the case caption be amended to reflect the defendants who have been added and removed from the case.  Fed. R. Civ. P. 10(a).

During the relevant period, the plaintiff worked as a school bus monitor for MJ Transportation, "a private company contracted by the Hartford school system to provide school bus services," and performed his duties "responsibly and without prior disciplinary record." (*Id.* at II ¶ 1–2, III ¶ 1). The plaintiff worked alongside Mr. Muñoz, a bus driver. (*Id.* at II ¶ 3). Mr. Muñoz's employment history included prior issues and misconduct, but MJ Transportation failed to properly screen him. (*Id.* at III ¶ 2). While the plaintiff was employed, coworkers and supervisors "made statements associating him with 'Trump voters' and anti-Venezuelan sentiments." (*Id.* at III ¶ 4). MJ Transportation's management, which included Ms. Guerrette, "planned and tolerated discriminatory conduct aimed at publicly humiliating and falsely incriminating the Plaintiff." (*Id.* at II ¶ 4).

The plaintiff also alleges that Ms. Natoli, a DCF investigator, "conducted a biased and discriminatory investigation with intent to criminalize the plaintiff." (*Id.* at II ¶ 5). Specifically, she "created false reports," "misrepresented facts," and "falsified identity and nationality data" that led to "administrative action" against the plaintiff. (*Id.* at III ¶ 5).

Together, DCF and MJ Transportation "acted as enforcement arms" of the Federal Defendants' policy, "using their power to manipulate child safety accusations — one of the most socially damaging — to destroy the Plaintiff's credibility and livelihood." (*Id.* at III ¶ 8). The plaintiff seeks compensatory damages, and punitive damages for his emotional distress, loss of housing and employment, reputational damage, and financial loss.[3] (*See id.* at V).

---

[3] As written, the plaintiff references injunctive relief in the damages section but not the relief requested. (Doc. No. 18-1 at V, VI). He makes no reference to a specific type of injunctive relief, so the Court does not address it here.

B.    **Immunity**

The plaintiff has named the DCF, a state agency, and several federal and state government officials.[4]  It is well-settled that "government officials are entitled to some form of immunity from suits for civil damages." *Nixon v. Fitzgerald*, 457 U.S. 731, 744 (1982).  The purpose of granting immunity to government officials is rooted in common law: it is in the public's interest that officials be granted immunity, because otherwise "executive officials would hesitate to exercise their discretion in a way injuriously affect[ing] the claims of particular individuals even when the public interest required bold and unhesitating action." *Id.* at 744–45.

The Court begins with the first defendant, President Trump.  The President is "entitled to absolute immunity from damages liability predicated on his official acts," *id.* at 749, which extend to the "'outer perimeter' of his official responsibility," *id.* at 756.  The Supreme Court in *Nixon v. Fitzgerald*, explained that such absolute immunity is "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history." *Id.*  "Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government." *Id.* at 751.

Here, the allegations undoubtedly concern acts that the President took in his official duties. In the Introduction to the amended complaint, the plaintiff alleges the case "arises from a systematic and coordinated persecution" against him that was "part of a discriminatory campaign targeting Venezuelans initiated at the highest levels of the U.S. Government, beginning on or about January 15, 2025, under the administration of President Donald J. Trump and Secretary of Homeland Security Kristi Noem."  (Doc. No. 18-1 at I).  He also alleges that President Trump

---

[4] These issues of immunity do not impact the non-government defendants: MJ Transportation, Mr. Muñoz, or Ms. Guerrette.

"established and promoted anti-Venezuelan directives." (*Id.* at II ¶ 7). Actions the President took to further his immigration policies as the Executive, fall within his official duties. *See Nixon*, 457 U.S. at 749–50 (explaining Article II, § 1 of the Constitution confers in the President "supervisory and policy responsibilities," including "the enforcement of federal law" and conducting foreign affairs); *Clinton v. Jones*, 520 U.S. 681 (1997) (explaining that "when defining the scope of an immunity for acts clearly taken *within* an official capacity, we have applied a functional approach") (emphasis in original). Accordingly, based on these allegations, President Trump is absolutely immune from liability as to all counts in this action. The Court therefore recommends all counts be DISMISSED against him on these grounds.

The President's absolute immunity does not, however, extend to his cabinet members, such as Secretary Noem. As a federal executive official, a cabinet member exercising her discretion in the performance of official duties is entitled to qualified immunity only. *See Butz v. Economou*, 438 U.S. 478, 506–07 (1978). This means that she is immune from suit for "mere mistakes in judgment, whether the mistake is one of fact or one of law," but she is not immune where she "with impunity discharge[s] [her] duties in a way that is known to [her] to violate the United States Constitution or in a manner that [she] should know transgresses a clearly established constitutional rule." *Id.* at 507. While Secretary Noem may be afforded qualified immunity, her entitlement to this defense is based on the factual basis of each claim. *See Pearson v. Callahan*, 555 U.S. 223, 238 (2009).

Lastly, the Court turns to the DCF and its employee, Ms. Natoli. The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by a Citizen of another State, or by Citizens or Subjects of any Foreign State." U.S.

Const. amend. XI.  "Under the Eleventh Amendment, a state and its agencies cannot be sued for money damages in federal court."  *Perry v. Connecticut*, No. 3:03-CV-1831 (RNC), 2003 WL 22992293, at *1 (D. Conn. Nov. 21, 2003) (citing *Alden v. Maine*, 527 U.S. 706, 755-57 (1999)).  "This bar remains in effect when State officials are sued for damages in their official capacity."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

The claims for monetary damages against the DCF and its employees are barred by the Eleventh Amendment.  The DCF is a state agency, Conn. Gen. Stat. §§ 17a-2, 17a-3, so it is immune from suit.  *See Henry v. Hill-Lilly*, No. 3:25-cv-380(KAD), 2025 WL 2374002, at *4 (D. Conn. Aug. 14, 2025) ("Neither the State nor DCF, a state agency, is considered to be a person subject to suit under 42 U.S.C. § 1983.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  To the extent the plaintiff intended to sue Ms. Natoli in her official capacity, the Eleventh Amendment also precludes suit against her.[5]  *See Mayes v. Conn. Dep't of Child. & Family Servs.*, No. 3:22-cv-750-CSH, 2022 WL 22843323, at *2 (D. Conn. Oct. 18, 2022) ("The individually named defendants here, who all appear to be employees of the DCF, cannot be sued in their official capacities.").  Therefore, the Court recommends that all claims for money damages against DCF and Ms. Natoli in her official capacity be DISMISSED with prejudice on Eleventh Amendment immunity grounds.

C.    <u>Title VI</u>

Title VI of the Civil Rights Act of 1964 ("Title VI") makes it unlawful for a person to "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," on the grounds of race, color, or national origin.  42 U.S.C. § 2000d.  While Title VI "does not explicitly provide for a private cause

---

[5] The plaintiff did not specify whether he intended to sue Ms. Natoli in her official or individual capacity.

of action," the Second Circuit held as a matter of first impression in *Bloomberg v. New York City Department of Education*, 119 F.4th 209, 212–13 (2d Cir. 2024) that the individual's right to be free intentional discrimination is implied.

To adequately allege a Title VI discrimination claim, the plaintiff must plead (1) that the defendant "received federal financial assistance," (2) that the plaintiff was an "intended beneficiary of the program or activity receiving the assistance," and (3) that the defendant discriminated against the plaintiff on the basis of race, color, or national origin "in connection with that program or activity." *Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 138 (S.D.N.Y. 2020) (citation modified). "The proper defendant in such a case is the entity that receives federal financial assistance, not an individual." *Kelly v. Rice*, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005); *Liu v. Minchella*, No. 3:22-cv-996 (SRU), 2023 WL 5979998, at *4 (D. Conn. Sept. 14, 2023) (explaining that the entity receiving federal assistance, not the individual, is the proper defendant because "[t]he plain text of the statute applies only 'to discrimination under *any program or activity receiving Federal financial assistance*") (quoting 42 U.S.C. § 2000d) (emphasis added).

Here, the plaintiff has failed to plead any of the elements required for an actionable Title VI claim. As an initial matter, the allegations in the proposed amended complaint are devoid of any allegations concerning a program or activity, let alone one that receives federal assistance. Accordingly, the plaintiff cannot establish the first two elements. *See Ragland v. Coulter et al.*, No. 20 Civ. 2002 (EK) (VMS), 2021 WL 4430271, at *7 (E.D.N.Y. June 25, 2021) ("As to the first two elements, a Title VI claim cannot proceed if it does not identify any 'program or activity receiving Federal financial assistance[.]'") (collecting cases). For the same reason, the plaintiff cannot establish the third element, because he cannot connect any allegations of discriminatory

conduct to a program or activity that he fails to allege.  Therefore, the Title VI claim must be DISMISSED against all defendants.

### D.    Equal Protection Violations and Conspiracy

The plaintiff describes Count II as "Civil Rights Violations (42 U.S.C. § 1983 and 1985 – Conspiracy to Deprive Equal Protection)."  (Doc. No. 18-1 at IV).  Sections 1983 and 1985 both create private causes of action for the deprivation of civil rights, albeit in different contexts. Section 1983 prohibits a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" from depriving another person of his "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see Torrez v. Dep't of Children & Families*, No. 3:22-cv-1234 (CSH), 2023 WL 4236039, at * 2 (D. Conn. June 28, 2023) (describing § 1983 as "a statute conferring a private cause of action against persons acting under color of state law who deprive an individual of his or her federally protected rights").  Section 1985, in relevant part, enables a plaintiff to recover damages for "injury or deprivation" of "any right or privilege" where two or more people conspire to deprive that person or a class of people "of the equal protection of the laws, or of equal privileges and immunities under the laws," if at least one of the conspirators takes "any act in furtherance of" the conspiracy.  42 U.S.C. § 1985(3).

Because the elements to establish civil rights violations under the two statutes are different, the Court addresses them separately.

### 1.    Section 1983

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting under 'color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*,

365 F.3d 107, 122 (2d Cir. 2004).  In addition, the defendant must have been personally involved in the deprivation of rights" to award damages. *Id.*

Here, the remaining defendants who do not enjoy absolute or Eleventh Amendment immunity fall into three categories: Secretary Noem, a federal official; MJ Transportation, a private company, and its employees Ms. Guerrette and Mr. Muñoz; and Ms. Natoli, a DCF investigator, in her individual capacity.

The Court begins with Secretary Noem. Section 1983 applies only to persons "acting under color of *state* law." 42 U.S.C. § 1983 (emphasis added). In any event, the allegations against Secretary Noem merely refer to her administrative policies and they do not plausibly suggest that she was personally involved in any wrong the plaintiff claims he suffered, an allegation that would be required in any suit against an official in her individual capacity.  Therefore, the Court recommends that Count II be DISMISSED against Secretary Noem.

Moving on to MJ Transportation and its employees, there is no allegation that they acted under color of law.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  Private parties act under color of state law only when their conduct is "fairly attributable to the state." *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir 2010) (per curiam).  In other words, the private actor was "a willful participant in joint activity with the State or its agents," *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), or "conspire[ed] with a state actor to violate an individual's federal rights." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005).  "[M]erely private conduct, no

matter how discriminatory or wrongful," is excluded from § 1983's reach.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

MJ Transportation is a private company and Ms. Guerrette and Mr. Muñoz, who were employees, acted as agents of it.  Although the plaintiff alleges that MJ Transportation entered into a contract with the Hartford school system, (Doc. No. 18-1 at II ¶ 2), allegations of a public contract are, standing alone, insufficient to establish these private defendants' conduct was attributable to the state.  *See Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (explaining an organization operates "under color of law" if there is "governmental control over or interference with" the affairs);  *Ahmad v. Yellow Cab Co. of New London & Groton, Inc.*, No. 3:12CV1307(AWT), 2013 WL 5411197, at *2 (D. Conn. Sept. 25, 2013) (finding the defendant did not act "under color of law" merely because it contracted with Connecticut Department of Transit); *Harrison v. SecurusTech.net*, No. 13–CV–4496 (JS)(AKT), 2014 WL 737830, at *6 (E.D.N.Y. Feb. 24, 2014) ("Here, SecurusTech.net is not a state actor, or acting under color of state law, merely by virtue of its public contract with the Suffolk Jail.") (collecting cases).  Accordingly, the § 1983 claim against MJ Transportation, Ms. Guerrette, and Mr. Muñoz, should be DISMISSED.

This leaves Ms. Natoli, the remaining defendant in her individual capacity.  With respect to the first element, the plaintiff properly alleges facts establishing that Ms. Natoli acted under color of law in her role as investigator for the DCF, a state agency.  *See Lindke v. Freed*, 601 U.S. 187, 195 n.1 (2024) (explaining that when a state or municipal employee violates a federal right while acting 'under color of law,' he can be sued in an individual capacity").

As for the second element, the underlying federal right that the plaintiff alleges Ms. Natoli violated is his right to the equal protection of the laws.  The Fourteenth Amendment's equal protection clause "is essentially a direction that all persons similarly situated should be treated

alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause." *Okin v. Village of Cornwall–on–Hudson Police Dep't.*, 577 F.3d 415, 438 (2d Cir. 2009). Here, the plaintiff alleges that Ms. Natoli "acted with bias, misrepresented facts, falsified identity and nationality data, and created false reports to support administrative action against [him]." (Doc. No. 18-1 at III ¶ 5). These allegations fall short for several reasons.

First, the plaintiff does not allege that he was treated differently than another similarly situated person subjected to DCF investigation. Second, presuming the plaintiff was treated differently, he does not allege the basis for the different treatment, such as his national origin or another classification. Third, the plaintiff did not allege Ms. Natoli acted with the requisite intent to establish an equal protection violation. Accordingly, the Court finds this claim should be DISMISSED as to Ms. Natoli, in her individual capacity.

### 2. Section 1985

"A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015).

The plaintiff fails to establish a § 1985(3) claim, because he has not properly alleged a conspiracy. A properly pleaded conspiracy requires a plaintiff to "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Hill*, 2025 WL 2374002, at *5 (quoting *Webb v. Goord*, 340 F.3d

105, 110 (2d Cir. 2013)).  Here, the allegations against the remaining defendants do not overlap.

Specifically, the allegations against Secretary Noem relate to her *national*, anti-Venezuelan

immigration policy; whereas the allegations against Ms. Natoli are limited to her *state* agency DCF

investigation only; whereas the allegations against MJ Transportation, Ms. Guerrette, and Mr.

Muñoz  concern the plaintiff's *private* employment.[6]  Although the plaintiff alleges Secretary

Noem's federal immigration policies "were implemented at the local level" through Ms. Natoli,

MJ Transportation, Ms. Guerrette, and Mr. Muñoz , (*see* Doc. No. 18-1 at I), he does not provide

any details that would "allow[] the court to draw the reasonable inference" that these defendants—

who address different topics and operate on different scales—entered into an agreement to violate

the plaintiff's equal protection rights.  *Iqbal*, 556 U.S. at 678.  Accordingly, the conspiracy claim

should be DISMISSED as to all defendants.

### E.    <u>Hate Crimes and Crimes Against Humanity</u>

The plaintiff next brings a clam for hates crimes and crimes against humanity "under the

international human rights conventions incorporated through the Supremacy Clause of the United

States Constitution."  As best the Court can tell, the plaintiff claims that the defendants have

violated his civil rights under international human rights conventions, and he believes the

Supremacy Clause of the United States Constitution affords him the power to bring such claims in

federal court.

The Supremacy Clause provides: "This Constitution, and the Laws of the United States

which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under

---

[6] The plaintiff cannot plausibly allege a conspiracy with MJ Transportation and its employees, because they are part of the same company.  "[B]ecause employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators").  *Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018) (acknowledging "intracorporate conspiracy doctrine" in the context of conspiracies to interfere with civil rights).

the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. It means that the United States Constitution, federal laws, and United States treaties are the "supreme Law of the Land" and that courts "must not give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015); *Martin v. United States*, 605 U.S. 395, 409 (2025) (stating that when federal and state laws conflict, "the Supremacy Clause tells us the state law must yield"). Notably, "the Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Id.* Nor is United States law subordinate to international law or treaties. *See Pierre v. Gonzales*, 502 F.3d 109, 119 (2d Cir. 2007). In other words, the Supremacy Clause does not give the plaintiff the power to enforce international conventions and norms.

The plaintiff similarly fails to identify an international treaty providing a cause of action in federal court.[7] "A treaty is . . . primarily a compact between independent nations." *Medellín v. Texas*, 552 U.S.C 491, 505 (2008). Generally, a treaty does not function as domestic law "unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms." *Id.* (internal quotation marks omitted). Even a self-executing treaty generally does not create a private cause of action "in the absence of express language to the contrary." *Id.* at 506 n.3. This is because "[t]he mechanisms for establishing and enforcing international treaties—namely, the nation's powers over foreign affairs—have been

---

[7] In this context, "convention" and "treaty" are synonymous. *See Treaty*, Black's Law Dictionary (12th ed. 2024) (defining "treaty" as "[a]n agreement formally signed, ratified, or adhered to between two countries or sovereigns; an international agreement concluded between two or more states in written form and governed by international law" and indicating it is "[a]lso termed *accord; convention; covenant; declaration; pact*") (emphasis in original). The Court will therefore use the term, "treaty," as it is explicitly referenced in the Supremacy Clause.

delegated by the Constitution to the Executive and Legislative branches of government." *Mora v. New York*, 524 F.3d 183, 201 (2d Cir. 2008).

Here, the plaintiff's amended complaint falls well short of establishing a valid cause of action based on violations of an international treaty. First, the plaintiff does not identify an international treaty concerning hate crimes and crimes against humanity that he believes applies to his particular facts. Second, he does not reference a federal statute effectuating a treaty. The Court thus concludes that the plaintiff does not have a private cause of action to pursue supposed violations of international treaties or conventions, and recommends that Count III be DISMISSED as to all defendants.

###    F.    Torture and Cruel, Inhuman or Degrading Treatment

Under Count IV, the plaintiff brings a claim for torture and cruel, inhuman, or degrading treatment in violation of the CAT, ICCPR, and 42 U.S.C. § 1983. As an initial matter, § 1983 does not itself create substantive rights—rather, it provides "a means to redress the deprivation of a federal right guaranteed elsewhere." *Diggs v. Town of Manchester*, 303. F. Supp. 2d 163, 182 (D. Conn. 2004). Stated differently, "[v]iolations of rights thus give rise to [Section] 1983 actions." *Shakhnes v. Berlin*, 689 F.3d 244, 250 (2d Cir. 2012). Accordingly, the Court presumes the plaintiff cites § 1983 as the statute through which he asserts rights under the CAT and ICCPR.

For the same reasons that the plaintiff fails to plausibly plead a claim for hate crimes and crimes against humanity, he fails to establish a claim for torture and cruel, inhuman or degrading treatment. Although the plaintiff specifically names the CAT and the ICCPR, neither treaty is self-executing and therefore does not bear the force of law in the United States. *See Pierre*, 502 F.3d at 119 (explaining that, because the CAT is not self-executing, the plaintiff "has no judicially enforceable right directly arising from the CAT as interpreted by its signatory nations"); *Flores v.*

*S. Peru Copper Corp.*, 414 F.3d 233, 257 n.35 (2d Cir. 2003) (stating the ICCPR is non-self-executing and "this treaty does not create a private cause of action in the United States courts"). Accordingly, these treaties cannot function as domestic law absent a federally enacted statute that implements the treaties' terms. *See Medellín*, 552 U.S. at 505.

This Court has not identified any federal statute, implementing the CAT or ICCPR, that would address the plaintiff's allegations about generalized anti-Venezuelan immigration policies, DCF investigations, or anti-Venezuelan statements in the workplace.[8]   Therefore, the Court recommends that Count IV be DISMISSED as to all defendants.

### G.    Defamation and Malicious Falsehood

The plaintiff's final count is for defamation and malicious falsehood.  The Court construes "malicious falsehood" as a defamation claim with malicious intent.

"Defamation is comprised of the torts of libel and slander. . . . Slander is oral defamation . . . . Libel . . .  is written defamation." *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 850 (2005) (citation & internal quotations omitted).  "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. . . ." *Cweklinsky v. Mobil Chem. Co.,* 267 Conn. 210, 217 (2004).  In Connecticut, "to establish a prima

---

[8] For instance, Congress enacted the Torture Victim Protection Act of 1991, Pub. L. No. 102–256, 106 Stat. 73 (enacted March 12, 1992) (codified as Note to 28 U.S.C. § 1350), which "executed, in part," the CAT insofar as it "created a cause of action for individuals subjected to official torture or extrajudicial executions." *Flores*, 414 F.3d at 246 n.20, 247 (citation modified).  "Official torture" and "extrajudicial executions" are not pleaded in this case.  Apart from the TVPA, Congress implemented the CAT by amending its immigration laws through the Foreign Affairs Reform and Restructuring Act of 1998, which "announced the policy of the United States" not to involuntarily remove a person from this country "to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." *Pierre*, 502 F.3d at 114 (Pub. L. No. 105–277, Div. G, tit. XXII, § 2242(a), 112 Stat. 2681, 2681–822 (codified at 8 U.S.C. § 1231 note)).  The plaintiff does not allege he is in removal proceedings.

facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gleason v. Smolinski*, 319 Conn. 394, 430 (2015) (citation modified).

As pleaded, the plaintiff has not pleaded with sufficient particularity a false statement made by any defendant. For example, the plaintiff alleges Ms. Guerrette and other MJ Transportation management "*planned* and *tolerated* discriminatory conduct aimed at publicly humiliating and falsely incriminating the Plaintiff," (Doc. No. 18-1 at III ¶ 3), but he fails to allege Ms. Guerrette actually made a false statement in the first instance. As another example, the plaintiff alleges Ms. Natoli "misrepresented facts" and "falsified identity and nationality data," (*id.* at III ¶ 5), but he does not plead with any particularity what the false statement is, let alone any of the other elements necessary to plead and prove a defamation claim.[9] Despite construing the complaint "liberally" and interpreting it "to raise the strongest arguments" the plaintiff suggests, *Stancuna*, 383 F. App'x at 24, the vague references to "misrepresented facts" and "falsified identity and nationality data" does not give Ms. Natoli a "fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery," *Kittay*, 230 F.3d at 541.

For these reasons, the Court recommends the Count V be DISMISSED as to all defendants.

### H.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." However, "[l]eave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part

---

[9] "[T]he Eleventh Amendment bars official-capacity claims brought under state law." *Siani v. SUNY at Farmingdale*, 7 F. Supp. 3d 304, 320 (E.D.N.Y. 2014).

of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotations omitted). "[A] proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not plausibly give rise to an entitlement to relief." *Fraser v. Caribe*, No. 3:20-CV-71 (SVN), 2022 WL 1210720, at * 3 (D. Conn. Apr. 25, 2022) (internal quotations and citation omitted).

For the reasons explained in this recommended ruling, the Court finds that amendment would be futile for nearly all claims against nearly all defendants. However, in the abundance of caution and with deference to the plaintiff's *pro se* status, the Court recommends giving the plaintiff another opportunity to amend the complaint as to Count II against Ms. Natoli in her individual capacity and as to Count V against , MJ Transportation, Ms. Guerrette, Mr. Muñoz, or Ms. Natoli in her individual capacity.[10] The Court notes that this recommended ruling explains significant shortcomings to the pleadings, which make it highly unlikely that the plaintiff could have a viable equal protection claim against Ms. Natoli or defamation claim against MJ Transportation, Ms. Guerrette, Mr. Muñoz, or Ms. Natoli. A second amended complaint should be drafted in a manner consistent with the Court's reasoning, and the Court strongly urges the plaintiff to consider the plausibility of his claims against these defendants.

## IV.    <u>CONCLUSION</u>

For the reasons above, the Court recommends dismissal of Counts I, III, and IV, with prejudice and without leave to amend, as to all defendants. The Court recommends that Count II be dismissed with prejudice and without leave to amend as to all defendants except Kimberly

---

[10] For Secretary Noem, who is not absolutely immune from suit, there are no allegations that could plausibly give rise to a defamation claim against her. Leave to amend would therefore be futile.

Natoli in her individual capacity. Count II should be dismissed without prejudice and with leave to amend as to Kimberly Natoli in her individual capacity. Lastly, the Court recommends that Count V be dismissed with prejudice as to President Trump, DCF, and Kimberly Natoli in her official capacity, because these defendants are immune from suit; and as to Secretary Noem, because leave to amend would be futile. Count V should be dismissed without prejudice and with leave to amend as to MJ Transportation, Mariluz Guerrette, Jesús Muñoz, and Kimberly Natoli in her individual capacity.

This is a recommended ruling. *See* Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days after filing of such order. *See* D. Conn. L. Civ. R. 72.2(a). Any party receiving notice or an order or recommended ruling from the Clerk by mail shall have five (5) additional days to file any objection. *See* D. Conn. L. Civ. R. 72.2(a). Failure to file a timely objection will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a) & 72; D. Conn. L. Civ. R. 72.2; *Impala v. U.S. Dep't Just.*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); *Small v. Sec'y of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).

It is so ordered this 25th day of November, 2025, at New Haven, Connecticut.

 /s/ Robert M. Spector, U.S.M.J.
ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE